B.H. STEPHENS and Annie
Ree Stephens, Plaintiffs,

v.

ST. REGIS PULP AND PAPER CO., a
DIVISION OF CHAMPION INTERNA-
TIONAL, and Champion International,
Defendants.

No. 2:93–CV–183 PS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Oct. 11, 1994.

William B. Raiford, III, Clarksdale, MS,
for plaintiffs.

Brooks R. Buchanan, Christy D. Jones,
Butler, Snow, O'Mara, Stevens & Cannada,
Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter comes before the Court on
Motion for Summary Judgment filed on be-
half of the defendants.[1]  The court, having
reviewed the motion, the response, the briefs
of counsel, the authorities cited, and being
otherwise fully advised in the premises finds
as follows, to-wit:

## FACTUAL BACKGROUND

On May 15, 1992, the plaintiff, B.H. Ste-
phens, received an amputation to his right
arm above the elbow when he slipped and fell
into a conveyor upon which he was perform-
ing maintenance work in the course of his
employment with Georgia–Pacific at G–P's
Monticello kraft paper mill.  The Monticello
mill had been purchased from St. Regis by

---

1. The defendants point out that the correct cor-
porate name of St. Regis is "St. Regis Corpora-
tion", not St. Regis Pulp and Paper Co.  They
also point out that St. Regis merged with Cham-
pion International, Inc. in 1985 and that the
surviving entity is Champion.

342

Georgia–Pacific on July 16, 1984, pursuant to an asset purchase agreement dated April 27, 1984. Construction on the plant had originally been completed in 1968. Plaintiff Stephens had begun work in the maintenance department of St. Regis shortly after the mill originally went on line. He was working in that same capacity with Georgia–Pacific at the time of his injury.

The area in which plaintiff was injured was an overhead conveyor approximately twenty feet above the floor. When the conveyor was originally constructed, no maintenance access points or walkways were constructed in conjunction therewith. In early 1984, shortly before the sale of the plant, St. Regis had a work platform and a ladder constructed to permit easier access to the conveyor in question. Access to the conveyor was gained by way of a 16–18 foot ladder to the work platform approximately four feet below the second floor. In order to traverse the work platform, average height personnel had to either crawl or walk stooped over. There were no guards around the chains, sprockets, belts or pulleys operating the conveyor. There were no guard rails around the work platform nor was the work platform constructed of non-slip material. While servicing the conveyor from this work platform, plaintiff slipped and fell causing his right arm to protrude into the unprotected conveyor drive as he tried to catch himself and resulting in its amputation above the elbow.

Plaintiffs' theory of liability is that St. Regis negligently created a defective condition in the premises by constructing the work platform in an unreasonably dangerous condition. Plaintiff's terminology sounds much like products liability jargon but he insists that he is alleging a straight negligence claim.

Defendant asserts that plaintiffs' claims fail for two reasons. First, that plaintiffs' claims are barred by Mississippi's statute of repose (Miss.Code Ann. § 15–1–41 (1972)); and second, that there is no genuine issue of material fact supporting plaintiffs' claims of any legal duty owed to them by defendant.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the nonmoving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*,

584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

### STATUTE OF REPOSE

A statute of repose bars "actions after a period of time beginning with the act of an alleged wrongdoer unrelated to the date of injury." *Rector v. Mississippi State Highway Com'n,* 623 So.2d 975, 977 (Miss. 1993). That statute, as amended June 1, 1985, provides;

No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of the deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, ... against any person, firm, or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.

This limitation shall not apply to actions for wrongful death.

The provisions of this section shall only apply to causes of action accruing from and after January 1, 1986; and any cause of action accruing prior to January 1, 1986, shall be governed by Chapter 350, Laws of 1972.

Miss.Code Ann. § 15–1–41 (Supp.1994). The editor's note accompanying § 15–1–41 explains that Chapter 350, Laws of 1972 is the former version of this section which provided a ten year limitation period.

Defendant first argues that the plant was originally designed and built by other contractors and accepted by St. Regis in 1968, over twenty-five years before Stephens filed suit and thus all prescriptive periods under the present and former statutes of repose have run.

Plaintiffs counter by pointing out that the work platform in question was constructed by St. Regis in early 1984 as an addition to the original plant. Therefore, according to plaintiffs, St. Regis was the designer and builder of the alleged "defective condition" (the work platform). St. Regis has not rebutted this assertion by plaintiffs. The Court therefore finds, for purposes of this action, that St. Regis was the designer and builder of the work platform and adjoining access ladder that was constructed in early 1984 and that such was an improvement to real property within the meaning of § 15–1–41.

Defendant then argues that the cause of action accrued on the date of injury, May 15, 1992. Since this date is after January 1, 1986, defendant argues that the six-year limitation of the 1985 amendment controls rather than the ten-year limitation found in the 1972 law, and even though the action did not accrue until May 15, 1992, the limitation period runs from the date of acceptance or first occupation or use of the plant by Georgia–Pacific which was no later than July 1984. Under this scenario, plaintiffs' claims filed in August 1993 would be time barred, because it would be more than six years after July 1984.

Plaintiff responds by arguing that for purposes of interpreting the language of the statute of repose, the cause of action "accrues" at the time of acceptance by Georgia–Pacific in July 1984 and therefore, the former § 15–1–41 (Chapter 350, Laws of 1972) in effect prior to June 1, 1985, applies with its ten year statute of limitation. Plaintiffs' ar-

gument is that since the statute of limitations found in § 15–1–41 begins to run after completion and acceptance or at the time of occupancy, that the reference to "cause of action accruing" found in *that section* should be the same time as when the statute commences to run.

The Mississippi Supreme Court in *Rector* reached the same conclusion as that argued for by plaintiff. "[W]hen the legislature used the term 'accruing' in this statute of repose, we deem the term to mean the date marking the action which begins the period of prescription." *Rector,* 623 So.2d at 978. The period of prescription in this case began to run no earlier than completion of the work platform in early 1984 and no later than the date of acceptance or first occupation or use of the mill by Georgia–Pacific, i.e. July 1984. This Court is *Erie* bound to follow *Rector.* Consequently, the ten year prescriptive period of former § 15–1–41 applies to plaintiffs' claims. The complaint was filed well within that time period and thus plaintiffs' claims relating to alleged deficiencies in the construction of the work platform structure by St. Regis are not time barred by this statute of repose.[2]

### DUTY

■ Defendant next argues that it owed no duty to plaintiff because it did not own, possess or control the premises at the time of Stephens' injury and thus cannot be liable to him for the injuries he has sustained. Plaintiffs admit that the 1984 sale of the plant to Georgia–Pacific was absolute and that thereafter St. Regis had no further ownership, possession or control of the facility from the date of sale up until the present time.

St. Regis contends that since it sold the plant to Georgia–Pacific, the law regarding vendor and purchaser applies. Defendant goes on to assert that with respect to the physical condition of the premises transferred, the rule of caveat emptor applies to commercial transactions and cites *O'Cain v. Harvey Freeman and Sons,* 603 So.2d 824, 832, n. 3 (Miss.1991). However, that refer-

ence is found in a concurring opinion, although five Justices agreed to that concurring opinion. It should be further noted that this concurring opinion was in fact arguing against the application of caveat emptor. Footnote 3, 603 So.2d at 832, cited by defendant, only states "the doctrine continues to have applicability to agricultural and commercial leases which intend to convey an interest in land." The concurring opinion in *O'Cain* goes on to say;

> Landlord-tenant relationships are one of the last vestiges in this state which the common law doctrine of caveat emptor applies.

(Footnote and citation omitted.) 603 So.2d at 831.

> ... I can no longer endorse the application of caveat emptor to residential lease agreements.

(Footnote omitted.) 603 So.2d at 832.

> ... Likewise when a building is constructed which causes injury or damages, an action in tort may be maintained against the builder. *Keyes v. Guy Bailey Homes, Inc.,* 439 So.2d 670, 673 (Miss.1983).

603 So.2d at 833. In *Keyes* the Court said:

> Since the doctrines of caveat emptor and merger no longer stand in this jurisdiction, the builder of a house is required to exercise reasonable care in the construction of said house.

*Keyes v. Guy Bailey Homes, Inc.,* 439 So.2d 670, 673 (Miss.1983). Plaintiff claims in the instant case that defendant constructed a defective walkway. This situation is analogous to one who builds a defective house. If one who negligently builds a house is liable, the same should be true as to one who negligently builds an improvement in a factory. The reasoning is identical. Based upon *Keyes* and *O'Cain,* this Court concludes that caveat emptor is not applicable in this case.

■ Defendant then cites the Restatement of Torts, Second § 352 for the duty owed to vendees. That section provides;

---

2. Any other claims that plaintiffs may assert for alleged deficiencies in the original construction of the plant by entities other than St. Regis are time barred since more than ten years passed

between the original acceptance and occupation of the plant in 1968 and the filing of the complaint.

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Although the Mississippi Supreme Court has not adopted this section of the Restatement, it has stated the almost identical rule in describing vendor liability. *See Stonecipher v. Kornhaus*, 623 So.2d 955, 962 (Miss. 1993). Defendant argues that there must generally be some indicia of ownership, possession or control by the vendor to establish his duty under this general rule of vendor liability, relying upon *Joseph v. Tennessee Partners, Inc.*, 501 So.2d 371 (Miss.1987).[3] However, the facts of this case and those of *Joseph* are not even close to being analogous. In that case property owned by the State of Mississippi (the coliseum) was leased to one of the defendants on condition that the defendant "must accept the 'grounds, exits, entrances, building(s), restrooms, and all other equipment and/or facilities,' and must leave these areas in the same condition as found", 501 So.2d 371 at 373. The Court in that case simply held that one who had no right to alter property, but to the contrary was forbidden by contract from altering such property, did not have sufficient control or possession to impose a duty and thus to impose liability for one injured upon the premises. That situation is entirely different from a situation where the defendant is charged with negligently constructing a defective improvement upon real property.

**3.** Overruled on sovereign immunity issues by *Churchill v. Pearl River Basin Dev. Dist.*, 619 So.2d 900 (Miss.1993).

**4.** Again, plaintiffs' allegations sound like products liability. However, for liability to attach under products liability theories, there must be a "product" which was sold by one in the general business of selling such products for consumption or use. Therefore, products liability theories are not consistent with bulk sales of assets between like manufacturers, as is the case before the Court. (See generally, Comment f, Section 402A, Restatement 2d, Torts.) This is a simple negligence action against the builder of what is alleged as a defective condition on the premises.

Plaintiffs do not dispute that St. Regis has exercised no ownership, possession or control over the plant since the sale in 1984. However, plaintiffs argue that St. Regis created a "defective condition unreasonably dangerous"[4] which was undisclosed to Georgia–Pacific at the time of the sale or up until the time of Stephens' injury. Undisclosed dangerous conditions are addressed by § 353 of the Restatement, which provides;

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

The Mississippi Court has not adopted this section either, but has addressed it without rejecting it, *Stonecipher*, 623 So.2d at 962,[5]

Five Judges of the Mississippi Court have stated, "[W]hen a building is constructed which causes injuries or damages, an action in tort may be maintained against the builder." *O'Cain v. Harvey Freeman and Sons*, 603 So.2d 824, 833 (Miss. 1991) (Concurring opinion by Justice Sullivan citing *Keyes v. Guy Bailey Homes, Inc.*, 439 So.2d 670, 673 (Miss.1983)).

**5.** *Stonecipher* involved a defective tree. That is an altogether different situation than that involved in this case which does not involve a tree that grows on its own, but rather this case involves an improvement to real property which it is alleged was negligently constructed and built by defendant.

and both parties argue for its application. This Court concludes that even though the Mississippi Supreme Court may well adopt both §§ 352 and 353 of the Restatement, that these sections would not be applied so as to excuse from liability one who negligently constructs an improvement upon property and then sells it. In other words § 352 would not apply in toto to one who is both the vendor and builder of a building. Section 15–1–41 gives a ten year or six year statute of limitations. To interpret § 352 as advocated by defendant would be to write off Section 15–1–41. Section 15–1–41 limits liability of a builder to a limited period of time, but it is not a complete bar to liability. To interpret § 352 as advocated by defendant would be to give a defendant builder who sells a building a complete bar to liability, while a contractor-builder who works on the building of another would have liability for either six or ten years. This Court does not believe that the legislature intended to treat a builder-seller any different than a builder-contractor. The legislature in adoption § 15–1–41 says that a builder of "an improvement to real property" shall have liability on work negligently done only for a period of six to ten years. Since the legislature said that one who negligently constructs a building will not have liability after six or ten years, conversely it says that a builder who is negligent will have liability for negligent work for up to the six or ten years, whichever time period is applicable. On the basis of § 15–1–41 and *Keyes,* this Court concludes that a builder of a defective improvement upon real estate is liable to those injured as a proximate result of the negligent construction of such improvement, until such time as the statute of limitations runs under § 15–1–41. This Court declines to interpret §§ 352 and 353 of the Restatement, which have not been expressly adopted by the Mississippi Supreme Court contrary to what this Court believes to be legislative intent as indicated by the adoption of § 15–1–41.

The Mississippi Supreme Court has clearly enunciated certain principles in regard to this case. However, that Court has not addressed this exact question. Although this Court feels that it has correctly interpreted the principles established by the Mississippi Supreme Court and the Legislature of the State of Mississippi, since the Mississippi Supreme Court has not ruled in a situation exactly as that presented herein, this Court would certify this question to the Mississippi Supreme Court if such a procedure was available.

Having determined that Restatement §§ 352 and 353 do not bar the instant action, this Court does not reach defendant's argument that this Court should find as a matter of law that it (St. Regis) did not conceal or fail to disclose a condition which involved an unreasonable risk of harm and in the alternative that Georgia–Pacific had had reasonable opportunity to discover the condition and take precautions.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment is Denied.

SO ORDERED AND ADJUDGED.